```
 1                    UNITED STATES DISTRICT COURT

 2                       DISTRICT OF ARIZONA

 3

 4   Seth Michael Winters and       )
     Genevieve Alyce Winters,       )
 5                                  )
                   Appellants,      )
 6                                  )
     vs.                            )   CV-21-00515-TUC-JGZ
 7                                  )
     Metric Roofing, Incorporated, )
 8                                  )   Tucson, Arizona
                   Appellee.        )   June 3, 2022
 9   _____)   1:50 p.m.

10

11                   TRANSCRIPT OF ORAL ARGUMENT
             BEFORE THE HONORABLE JENNIFER G. ZIPPS
12                 UNITED STATES DISTRICT JUDGE

13   For the Appellants:
          Mr. Kenneth L. Neeley
14        Neeley Law Firm
          1120 South Dobson Road, Suite 230
15        Chandler, AZ  85286

16   For the Appellee:
          Mr. Kasey C. Nye
17        Waterfall, Economidis, Caldwell, Hanshaw & Villamana, PC
          Williams Center
18        5210 East Williams Circle, Suite 800
          Tucson, AZ  85711

19

20

21

22   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
23
                    Aaron H. LaDuke, RMR, CRR
24              Federal Official Court Reporter
                      405 W. Congress St.
25                 Tucson, Arizona  85701
```

1            P R O C E E D I N G S

2            THE CLERK:  In civil matter 21-515, Seth Michael

3   Winters versus Metric Roofing, Incorporated, on for oral

4   argument.

5        Counsel, please state your appearances.

6            MR. NEELEY:  Good afternoon, Your Honor.  Kenneth

7   Neeley for appellants, the Winters.

8            THE COURT:  Good afternoon.

9            MR. NYE:  Good afternoon, Your Honor.  Kasey Nye,

10  with the law firm Waterfall Economidis, on behalf of the

11  appellee, Metric Roofing.

12           THE COURT:  Thank you.  Good afternoon.

13       All right.  So this is an appeal from the decision of

14  Judge Gan, and I've read the parties' submissions, and I'll

15  hear from the appellant first.

16           MR. NEELEY:  Thank you, Your Honor.  It's my first

17  time in a courtroom in 30 months, so hopefully it's like

18  riding a bike and it comes back to me.  It's been a long time.

19  I would like to reserve about six minutes for rebuttal, if

20  that's okay with the Court --

21           THE COURT:  Okay.

22           MR. NEELEY:  -- of my time.  Thank you, Your Honor.

23       So, Your Honor, as you mentioned, you've read the papers.

24  I think it might be helpful for me to give a little bit of

25  background and context to the Court, as opposed to just

1    rehashing the arguments in my briefs, and hopefully that will

2    also be a little bit more interesting for the Court as well.

3         One of the fundamental policies of the bankruptcy code,

4    as Your Honor knows, is the fresh start afforded to debtors

5    through the discharge of their debts.  Thus, the Ninth Circuit

6    has said that exceptions to discharge must be strictly

7    construed against the creditor and in favor of the debtor.

8         Additionally, Congress -- and importantly, Congress has

9    decided, over several decades and over several revisions to

10   the bankruptcy code, to allow an expanded discharge to those

11   debtors who are able and willing to file Chapter 13 and

12   committal of their disposable income to a three to five-year

13   payment plan.  One category of debt, therefore, that can be

14   discharged in Chapter 13 but not in Chapter 7 are debts that

15   are, quote, "incurred through willful or malicious injury," so

16   basically intentional tort types of debts.

17        Because of this, when a debtor with this type of debt

18   seeks counsel, it is common for a bankruptcy attorney to

19   recommend relief under Chapter 13, and that is exactly what

20   happened here.  My clients had just been steamrolled, in a

21   state court case, by a well-funded former employer, and they

22   had a judgment against them for various causes of action.

23   Briefly, it was about -- it was $70,000 for breach of

24   fiduciary duty -- and I'll round to the nearest thousand --

25   26,000 for tortious interference within business relations,

70,000 for unfair competition, 9,000 for defamation, and 6,000
for conversion.

Additionally, the judgment in that case awarded $350,000
in punitive damages but didn't allocate that to any cause of
action.  In fact, next to each cause of action, the jury had
written zero dollars for punitive, but then at the bottom of
the form, $350,000 total punitive damages.  So that was never
quite explained, but nevertheless there were punitive damages
and there were various causes of action.

When I met with my clients, I knew that Chapter 13 would
discharge a large portion of this debt, the tortious
interference, the unfair competition, and the defamation,
because those are solidly within 11 U.S.C. Section 523(a)(6).
That was about 58 percent of the debt, if allocating the
punitive damages pro rata across the causes of action.

I thought the $6,000 for conversion might not be
dischargeable, but that amount was manageable for my clients.
The 70,000 for breach of fiduciary duty was concerning to me
until I did more research and learned that fiduciary duty,
under federal law, requires an express trust.

I found a case called *In Re Chavez*, from right here in
Tucson, decided by Judge Marlar in 2010, stating that no
Arizona case, nor Ninth Circuit case applying Arizona law, has
ever found an employer-employee relationship, even when the
employee is a general manager, to create a fiduciary

1  relationship actionable under 523(a)(4).

2      My client's facts were nearly identical.  My client was a

3  general manager for Metric.  He had nothing more than a

4  contractual relationship.  And while the jury and the state

5  court did find breach of fiduciary duty, the law in Arizona

6  for a fiduciary relationship is a lower standard than the

7  federal standard, and no allegation of an express trust exists

8  in the state court complaint, in the state court judgment or

9  findings by the jury, or in the adversary complaint at issue

10  in this particular case.

11      THE COURT:  So is that what you would have litigated

12  in the adversary action?

13      MR. NEELEY:  Exactly, and thus all the background,

14  the exhaustive background.

15      So interestingly, a bit of an aside, not necessarily

16  dispositive in any way, but interestingly, the attorney who

17  represented the debtors, John and Paula Chavez, in winning

18  that summary judgment in Judge Marlar's court, was Mr. Cox,

19  who later represented Metric in this case, on the other side

20  of the same issue.

21      So per my advice, my clients filed Chapter 13, as

22  detailed in the papers.  Metric objected under two

23  subsections, Section 523(a)(4) and Section 523(a)(6).  Metric

24  brought those claims.  Over the course of eight months of

25  litigation, we were at the stage where we had competing

cross-motions for summary judgment.  At the court's behest, we
held a settlement conference, and I told Mr. Cox and
Mr. Larson that I was confident I would win the motion for
summary judgment on the (a)(4) claims.  In fact, I only
brought a summary judgment motion on the (a)(4) claims.  I
conceded that the (a)(6) claims were likely good non-
dischargeability claims.  That was the reason we were in
Chapter 13.  I told them I felt I would win that.

I told them that the conversion, the $6,000, that
smaller award, might not be dischargeable.  But I offered to
stipulate that the (a)(6) claims were non-dischargeable if
they would agree to drop that portion of their complaint.
Again, I was very confident that that would have been the
result on summary decision had we gone to hearing in the case.

Mr. Larson sent me an email.  It's in the excerpts of
record.  The relevant portion just says:  We accept the offer
of the Winters, and we will agree that such amount, $202,000,
is non-dischargeable pursuant to Section 523(a)(6).  Our
office will prepare the stipulation.  And since this all
occurred in 2016, some narrative has been created by Metric,
and disappointingly perpetuated by the bankruptcy court, that
I engaged in some kind of trickery in this, at the settlement
conference.  Mr. Nye may, no doubt, continue to point out what
he might feel were bad acts.

I was a relatively new bankruptcy attorney negotiating

1   with two attorneys, one 40 years my senior, exactly, and one

2   six or seven years my senior, on a basic principle of

3   bankruptcy law.  I offered what I thought I would win at

4   summary judgment.  There was no trickery at all.  I simply

5   told them what I felt would happen but what we were willing

6   to agree to.

7       I did not in this case, nor have I ever in any case, lied

8   to an opposing party, concealed material facts from an

9   opposing party, surreptitiously added language to any document

10  or any email or any court filing.  Everything in this case and

11  in all my cases occurs in good faith, in the open, and based

12  on my prediction of likely outcome of proceeding with

13  litigation.  Yet the bankruptcy court made it clear that it

14  specifically based its decision to reinterpret the meaning of

15  our stipulation based on my behavior.

16      In my reply brief, I quote the court; and just to

17  emphasize again, Judge Gan said:  If there was an email from

18  you that says the debt is going away once I confirm the plan

19  and we complete plan payments and you understand that, then

20  there's no argument here.  They're done.  I don't even have to

21  have a hearing.

22      I don't, honestly don't understand this because what

23  Judge Gan is effectively saying is the agreement is clear, but

24  if you, Mr. Neeley, would have been able to read Mr. Larson

25  and Mr. Cox's mind and know that they didn't understand what

1   the super discharge was and then give them legal advice about

2   the effect of the super discharge, then we wouldn't have a

3   problem.  Well, that might be true, but also that was never my

4   responsibility, nor did I ever read their mind to know that

5   they didn't understand the effect of what they were signing

6   to.

7       I think Judge Gan mistakes Metric saying "We made a

8   mistake, we didn't understand the contract, and we never would

9   have agreed to it if we did" with ambiguity in the

10  stipulation.  The stipulation is not ambiguous.  It's very

11  clear.  It, in fact, agrees to what Metric claimed in their

12  complaint in the adversary proceeding, that some of the debt

13  was non-dischargeable under Section (a)(6), and we simply

14  agreed to that.

15      So we have here Metric now kind of admitting it was

16  confused and moved for Rule 60 relief.  It said it made a

17  mistake, it said it had no understanding of the effect of

18  bankruptcy law, but the agreement itself is binding under

19  Arizona law of interpretation of contracts.

20      There are numerous cites in my briefs.  An important one,

21  I think, from *Employers Mutual*, an Arizona Supreme Court case

22  from 2008, states that the provisions of a contract are

23  plain -- if the provisions of a contract are plain and

24  unambiguous on their face, they must be applied as written,

25  and the court will not pervert or do violence to the language

1  used or expand it beyond its plain and ordinary meaning or add

2  something to the contract.

3      Unfortunately, I feel like that's exactly what Judge Gan

4  did here.  He expanded the contract beyond its plain meaning.

5  He reimagined the contract as a waiver of discharge under

6  Section 1328(a), which is never what any party intended.

7  Metric never even made any such argument until the court

8  brought that up in the hearing on November 18th.

9      But most importantly, the court ignored the phrase

10  "pursuant to 11 U.S.C. Section 523(a)(6)," which was conceding

11  that claim that Metric had made, which was what we agreed to

12  in the settlement conference, which is what Metric emailed me

13  and said we agreed to, which is what went in the motion to

14  settle the case on the stipulation that was filed in the case,

15  agreed to by Metric and filed in the case.  And I think that

16  now, five years later, it's unfortunate that Metric made a

17  mistake, but it's not my clients that should pay the price for

18  that mistake when the contract itself, on its face, is clear.

19  And that is why I feel that the Court should overturn the

20  bankruptcy court's decision that this contract is a waiver of

21  discharge under Section 1328(a).

22      Any questions, Your Honor?

23          THE COURT:  No.  Thank you.

24          MR. NYE:  Pardon me.  I'm going to try to use a

25  computer here.

1          THE COURT:  All right.

2          MR. NYE:  We will see how this goes.  I guess I need

3     to do that from here.  All right.  Okay.  We'll start here and

4     then we'll take it from there.

5          So thank you, Your Honor, for the -- and may it please

6     the Court.  To me, the most important thing to -- one of the

7     most important preliminary things to recognize here is that

8     the matter before Judge Gan was a request for equitable relief

9     under Rule 60.

10         In my first couple of weeks working for Eileen Hollowell

11    as a baby law clerk, I was in the hallways of La Placita when

12    the bankruptcy was there, and I ran in to Judge Marlar.  And

13    he said, "You know, Kasey, the most incredible thing about

14    bankruptcy court is that we're always doing equity.  It's

15    equity all the time, and it's understanding and figuring out a

16    way to fashion relief."

17         Metric, we brought a Rule 60 motion on this and, in

18    particular, the kind of Rule 60 relief that Judge Gan provided

19    us.  And as I read Rule 60 and particularly the (b)(6) part of

20    Rule 60, under the manifest injustice heading or purview, is

21    it gives the Court the power to fashion equitable relief as

22    the Court sees fit.  And it is correct that the relief we were

23    provided by Judge Gan is not exactly the relief that we asked

24    for.

25         So backing up a little bit to what Mr. Neeley was talking

1   about in terms of the (a)(6) piece, what I would like to show

2   the Court is under Tab 11 of our excerpt of record, and it's

3   the order confirming the Chapter 13 plan, and I want to point

4   out a couple of things, that it's not as, if you will,

5   clear-cut as Mr. Neeley makes it out here.

6       So you'll see at the top here, you're looking at a

7   stipulated order confirming the plan that was entered.  And

8   then on page 3 of that, I believe, there is a section called

9   "Other Provisions," and this is what references and

10  incorporates by reference the stipulation in the adversary

11  proceeding.  And what it says here is the claim from the

12  superior court case, quote, "is excepted from discharge," and

13  then it does say, "pursuant to 523(a)(6), in the amount of

14  $319,827, with interest from the date of the judgment."  And

15  that's the judgment in the adversary, I believe.  And then it

16  adds this language:  "And the balance of the superior court

17  judgment in the amount of $211,422 shall be and hereby is

18  subject to discharge."  And that's the part of the language

19  that Judge Gan focused on as being superfluous and not

20  necessary, if we have Mr. Neeley's reading of the stipulation.

21      And then the other important point that I want to make

22  here --

23          THE COURT:  Well, let me just make sure I understand

24  that a moment.  The order of confirmation is entered at the

25  time of Confirmation of Plan but before payments are made.

1          MR. NYE:  In Chapter 13, a debtor starts making

2   payments from month one.  They propose a plan, and if the plan

3   payments adjust, it's a 36 to 60-month time period where

4   payments are made based on -- and the amount that the debtor

5   pays has nothing to do with the amount of the debt.

6          THE COURT:  But remind me, at what point in the

7   proceedings was the Order Confirming Plan entered?

8          MR. NYE:  Okay.  So the --

9          THE COURT:  Is it the end of the plan?

10          MR. NYE:  No, Your Honor.  It's at the beginning of

11   the plan.

12          THE COURT:  So it's at the beginning of the plan.

13   Payments are being made, creditors are negotiating their

14   claims, adversaries are being filed, and then all of those

15   things are incorporated into the Order Confirming Plan, which

16   is entered before all of the plan payments are made.

17          MR. NYE:  That's not exactly right in terms of when

18   the payments are made, Your Honor.  The payment -- so the

19   debtor filed bankruptcy.  I don't recall the petition date.

20   The first month after they filed -- and when they file the

21   Chapter 13 case, they have to make a monthly payment, and they

22   make monthly payments based on the plan that they submit at

23   the time they file their bankruptcy case.  So they either file

24   it with their petition or they have 14 days to come in and

25   file it, and they immediately -- they propose a plan and they

1   make monthly payments.

2       Now the yardstick for how much a debtor is going to pay

3   in bankruptcy has a few variables, but it's primarily driven

4   on two things: the amount of their projected disposable

5   income.  That's basically if you take out their necessary

6   living expenses and what they have to pay on secured claims

7   and things, the net of that gets paid into a plan and gets

8   paid to a Chapter 13 trustee and paid to priority and general

9   unsecured creditors.

10      The other yardstick is when a debtor owns nonexempt

11  property.  Say they've got an RV that's worth X that they

12  can't exempt.  They would have to at least put that amount of

13  value into it.  But the thing that's important about that is

14  none of that has anything to do with the amount of the debt or

15  anything.  It's simply a yardstick.  So the debtor's

16  obligation under their plan is completely neutral as to

17  whether or not this debt is dischargeable.  So the debtors

18  would pay whether the debt is dischargeable or non-

19  dischargeable.  The only significance of that is what, if any,

20  amount of a judgment would survive a bankruptcy discharge.

21          THE COURT:  Well, the point I was getting at is if

22  the debtors don't make all of their payments under the plan,

23  then the debt does become due.  The super discharge does not

24  take effect.  It's a two-step process for the discharge,

25  right?

1          MR. NYE:  Yes.

2          THE COURT:  So to the extent that the language is in

3    the Order Confirming Plan, it doesn't -- that plan doesn't

4    actually establish, at the point in time that it's entered,

5    whether or not the parties' stipulation will take full effect

6    as to the discharge of the debts, because if the debtors don't

7    complete their plan payments, then am I correct that the whole

8    amount would become due and payable again?

9          MR. NYE:  Correct, Your Honor.  So the situation is

10   that when you confirm a plan, there are going to be a couple

11   of outcomes.  When you file Chapter 13, there are a few

12   outcomes.  The plan may be confirmed or not confirmed.  If the

13   plan is confirmed and you make all the payments, you get a

14   discharge at the end of it.  And if you fail to make the

15   payments, a couple of things can happen.  You can apply for a

16   hardship discharge and you can apply for -- or the case can be

17   dismissed.  The debtors actually have an absolute right to

18   dismiss the case at any time because of how wages tie to the

19   Thirteenth Amendment, believe it or not.  So they have an

20   absolute right to dismiss a case, in which case they don't get

21   a discharge.

22         And then the third option is it can be converted to

23   Chapter 7.  The discharge is only -- so really the language

24   that Mr. Neeley is calling for, the plain language of that

25   stipulation would be that we're agreeing that this is

1   non-dischargeable if and only if we default on our plan and

2   the case is dismissed or there's a hardship discharge entered.

3       And so the 523(a)(6) -- and this is the language that I

4   wanted to point out to the Court that I think is relevant to

5   this discussion is this very next paragraph here.  Under the

6   "Other Provisions," it says, "Unsecured nonpriority claims" --

7   which, dischargeable or non-dischargeable, it's an unsecured

8   nonpriority claim that my client has.  It says, "All other

9   claims shall be classified as unsecured and nonpriority.  Such

10  claims shall be paid pro rata.  The balance of payments under

11  the plan and any unsecured debt balance remaining unpaid at

12  the end of the plan may be discharged as provided in 1328."

13      So respectfully to Mr. Neeley's position -- and I

14  understand his position.  There's a -- that language is -- it

15  certainly appears, anyway, from that language that there's a

16  separate agreement and treatment of the Metric claim, okay?

17  So, in other words, we're dealing with this claim.  It's a

18  one-off.  We're agreeing this amount is non-dischargeable, and

19  we're expressly agreeing this amount is being discharged, and

20  that was the language that Judge Gan focused on.

21      A couple of other things that I would like to point out

22  that are in the record, Your Honor, in relation to the relief

23  we asked for, which was the law is actually that in Chapter 13

24  cases, a non-dischargeability claim under 11 U.S.C. 523(a)(6),

25  the kind that is subject to a super discharge, is not ripe for

 1  subject matter jurisdiction to exist until either -- until the

 2  debtor converts the case or applies for a hardship discharge.

 3          THE COURT:  All right.  Let me think about that a

 4  minute and make sure I understand it.

 5      I don't understand it.  Subject matter jurisdiction to

 6  exist where, in bankruptcy court, in here, in the final

 7  determination of the dischargeability?

 8          MR. NYE:  So there is the ability for someone who's

 9  been sued in Chapter 13, under 523(a)(6), to file a Rule 12

10  motion to dismiss for lack of subject matter jurisdiction,

11  which is a defense you can never waive -- you can bring it at

12  any time -- that it's just not ripe because we're not seeking

13  a discharge where this even comes up.

14      So the relief we actually asked for from the court was,

15  Your Honor, let's -- we recognize what happened here, but

16  there wasn't really jurisdiction to do the -- to agree to a

17  judgment, which is what happened in the adversary under

18  523(a)(6).  It's just subject matter jurisdiction is subject

19  matter jurisdiction.  You should just unwind all of this and

20  we can go back and sort this out.

21      Judge Gan looked at this and what he saw was -- I'm kind

22  of a basketball nerd -- a head fake a little bit here, because

23  there's all this language about, there's all this talk about

24  1328 and all the rest of the unsecured, all the other

25  unsecured claims are going to be discharged under 1328, in

this paragraph, but we've got this other one where you've got

language that this amount is not discharged -- it references

the code section that Mr. Neeley is saying brings it under

this 1328 so that it's discharged anyway -- and this other

amount is not discharged.

What Judge Gan said, which was very interesting to me, is

that why even say anything about the $211,000?  Why not --

there's no need for that.  You could simply stipulate to a

judgment that this amount is non-dischargeable under

523(a)(6), everything else is dismissed, gone as a

non-dischargeable amount.

And when you add that, what Judge Gan was -- as I

understand Judge Gan here, he was saying, you didn't need

that.  That made this a head fake.  When you add that and then

in your next paragraph you say everything else, all other

debts are subject to 1328, it's a head fake.  And he said,

this doesn't feel fair to me.  We should go back.  We should

do this.

So that's where we sit, Your Honor, in this, and it's a

challenging situation by any measure is what I'll say.

So, and one other point I would like to point out.

Mr. Cox was, and he's retired a couple of years ago now, was a

bankruptcy attorney of 40 years.  When you look at the email

exchange that's going on there, you'll note that it's Corey

Larson, the commercial litigator, not the bankruptcy lawyer,

1  who fires out of the gate and acknowledges that.  And then

2  when you look at the drafts of the stipulation that went back

3  and forth that are in the record in relation to our response

4  and the reply to the -- their response to the motion, Rule 60

5  motion and our reply, there is the red line where we sent it

6  over with the language that's our interpretation, 319 is

7  non-dischargeable, 211 is discharged, and it came back that

8  Mr. Neeley -- and it's consistent with the emails; I'm not

9  saying he did anything untoward there; it's just consistent

10  with the emails -- is 523(a)(6).

11       And I think that it was a little -- at the hearing, I was

12  a little taken aback by how aggressively Judge Gan went at

13  Mr. Neeley, but I do also feel that if it's something that's

14  as essential as discharging $320,000 and this kind of feels

15  too good to be true, it was a fact.  You could have written it

16  into the stipulation at the time.  Mr. Neeley's

17  interpretation, it's here.  We could have written it into the

18  stipulation at the time.  $319,000 is non-dischargeable under

19  523(a)(6), but as long as we -- you could have just said, so

20  it's going to be discharged if we make all of our payments or

21  not, and just made sure that everybody was on the same page

22  about what was going on, even though, you know, it's in the

23  law and we're all charged with knowing the law.  I get that.

24  But if it's that big a deal -- and Judge Gan got at this more

25  aggressively, more than I would have -- but just say it,

1  because he could have said it at the time.  So, hey, Mr. Cox,

2  you've been at this a long time.  This is what we're agreeing

3  to, because wouldn't you want that to be as clear as possible?

4       THE COURT:  Well, Mr. Cox's name was on the filing,

5  and Mr. Cox was the bankruptcy attorney.

6       MR. NYE:  He was, Your Honor.

7       THE COURT:  So let me just back up a little bit.  The

8  stipulation itself doesn't appear to be ambiguous.  It appears

9  to be pretty clear as far as what the parties agree to.  They

10 agreed to a discharge, and they cited a specific provision of

11 the bankruptcy code.  And bankruptcy attorneys know that the

12 discharge provisions are tricky and that you have to look

13 carefully at which provision that you're agreeing to a

14 discharge under and that there's a super discharge in a 1326

15 case that takes into account the discharge of a greater number

16 of debts than in other chapters.

17       MR. NYE:  Yes.

18       THE COURT:  So, I mean, a bankruptcy attorney would

19 know that.  When you see somebody designating a particular

20 section, I think that would alert a bankruptcy attorney that

21 they need to consider the implications of that designation.

22       And you've mentioned how Judge Gan addressed your Rule 60

23 motion, somewhat suggesting that that wasn't the remedy that

24 you were requesting and, in some ways, implicitly

25 acknowledging that the stipulation is pretty clear as to what

1   section of the bankruptcy code that the discharge is occurring

2   under.  The discharge in a Chapter 13 really is that two-step

3   process, right?  First, you determine what section under 523

4   the discharge applies to; and then in a Chapter 13, when

5   there's completion of the plan payments, then there's a

6   determination of whether or not the super discharge takes

7   effect for a 523(a)(6) debt like this.

8        So what is it that you would have wanted Judge Gan to do,

9   or what do you think this Court should do, given the

10  circumstances?  You mentioned equity, and I suppose that what

11  Mr. Neeley is going to say, as far as equity, is that his

12  clients paid into the plan for five years, having entered into

13  this stipulation and believing that the debt would be

14  discharged.  So if you can help me frame where you want to go

15  with that.

16            MR. NYE:  So obviously, all other things being equal,

17  on behalf of my client, I would like Judge Gan's ruling to

18  stand, right?  But the specific relief that we were looking

19  for, Your Honor, was to say the actual judgment in the

20  adversary proceeding is under 523(a)(6), and there's a subject

21  matter jurisdiction problem with that.  There were pending

22  motions for summary judgment on the (a)(4) claim and a

23  cross-motion on our side, and there's at any time the defense

24  to that that this is just not right.  There's not subject

25  matter jurisdiction to enter this.

1          So what we had said was, okay, let's just void the

2     judgment and we'll go back to where we were prejudgment and

3     litigate the (a)(4), (a)(6) claim pre-stipulation and then

4     take it from there.

5              THE COURT:  So there's no subject matter jurisdiction

6     as to --

7              MR. NYE:  (a)(6).

8              THE COURT:  -- the parties' stipulation or the

9     discharge, the discharge order?

10             MR. NYE:  No.  The discharge order is good as to

11    everybody.  The only question is whether this particular debt

12    is dischargeable or not.  So we had brought two claims.  And I

13    know Mr. Neeley expresses confidence in his position.  We were

14    equally confident in our position.  So the --

15             THE COURT:  But how do we get back to the adversary

16    proceeding that you've settled with a clear agreement?  How do

17    I get back there?  I mean, how are you able to settle that

18    case in the first place if there was no subject matter

19    jurisdiction?

20             MR. NYE:  Well, there were two claims.  There was

21    subject matter jurisdiction as to (a)(4), so the --

22             THE COURT:  But you brought the (a)(4) and the (a)(6)

23    claims.

24             MR. NYE:  Correct, Your Honor.  So what we were

25    asking is saying basically the remedy of Judge Gan kind of

1  flipped the equities in this situation.  We went into a

2  stipulation thinking we were getting one thing, that on the

3  tail end of this plan they were going to be able to try to

4  collect on this non-dischargeable debt, and his client was

5  thinking and Mr. Winters -- and I think they're a couple.  I'm

6  sorry.  The Winters were thinking, you know, if we pay into

7  this plan, we're free.  It's not clear to me that there was a

8  meeting of the minds, in terms of intent, other than charging

9  the lawyers with knowing the law, right?  So --

10       THE COURT:  There was a meeting of minds as to the

11  terms of the agreement but maybe not the effect of what was

12  being agreed to.

13       MR. NYE:  Correct, Your Honor.  And I know for a fact

14  what the client was advised as to what they were entering

15  into.

16       THE COURT:  I imagine.

17       MR. NYE:  And so the discharge is good as to every

18  other debt, and really the only question -- and now as to the

19  (a)(6) claims, effectively, what we were effectively asking

20  the court as a remedy was let's go back and litigate, because

21  no one -- there wasn't truly a meeting of the minds and a

22  manifest injustice occurred here, let's go back and litigate

23  whether the (a)(4) claim is good and what the measure of

24  damages would be under (a)(4).  And it may be that Mr. Neeley

25  prevails, maybe that we prevail, but just go back to that

1  point, and the end result of that is whatever was an (a)(6)

2  claim is discharged, it's gone forever.  There's nothing to do

3  about that because there's not even a point of litigating that

4  because it's already been discharged.  There's the issue over

5  the (a)(4) claim in saying, hey, we were never really signing

6  up for this; and then what Judge Gan did, they weren't really

7  signing up for what Judge Gan did.

8      I think the equitable thing to do, Your Honor, would be

9  to say, okay, yeah, this is some -- either we're going to have

10  an injustice for one party or the other here, or we can go

11  back to a point -- there were pending motions for summary

12  judgment.  We can just pick up there and either decide to

13  settle or not, or we can determine that, and perhaps

14  Mr. Neeley prevails on his summary judgment motion and it all

15  goes away, that way as well.  But that's really, short of

16  affirming Judge Gan, that's what I believe an equitable

17  solution would be.

18          THE COURT:  All right.  Thank you.

19          MR. NYE:  Thank you.

20          MR. NEELEY:  Your Honor, there is one more way that

21  the super discharge goes away, so I just wanted to clarify

22  that.  Mr. Nye talked about a hardship discharge in Chapter 13

23  or a dismissal, but also it's very common for a Chapter 13 to

24  convert to a Chapter 7.  And Mr. -- sorry.  Judge Gan found it

25  very important that Metric got nothing, and I don't think that

1   that's true.  Metric, first of all, got payments under the

2   Chapter 13, and they also were assured that they would, that

3   those payments would continue, payments equaling all of the

4   debtors' disposable monthly income.  Mr. Nye is right that

5   that is not in relation to the amount of debt.  Sometimes a

6   debtor in Chapter 13 pays 90 percent of their debt, and

7   sometimes they pay 4 percent of their debt.

8            THE COURT:  And it was 16,000 here?

9            MR. NEELEY:  Yeah, they received approximately

10  16,000.  They did get something for that agreement.  They held

11  my clients into a -- it's a pretty arduous process to go

12  through a Chapter 13.

13       What Mr. Nye asked the Court, you know, short of

14  affirming, would be Rule 60 relief, and that's not really the

15  issue before the Court today.  Now is that still an open

16  avenue for Metric in the bankruptcy court?  Absolutely.  Judge

17  Gan did indicate at the hearing on November 18th that he

18  didn't think this was a Rule 60 issue, but he might change his

19  mind if this Court says this contract and stipulation is clear

20  and, under Arizona contract law, it is an agreement that is

21  not ambiguous and it can't be considered a waiver of discharge

22  under Section 1328(a); it needs to go back to the bankruptcy

23  court, and then the bankruptcy court may hear Rule 60

24  arguments.

25       And I would expect that and I would -- we, in fact, teed

1   that all up for the judge for this hearing.  There were

2   extensive briefs with waivers of page limits and everything.

3   There is a lot of law on the subject matter jurisdiction issue

4   that Mr. Nye brought up, on Rule 60 and the various

5   subsections of Rule 60, and we can make that argument to Judge

6   Gan.

7       But I think that what's before the Court today is, is the

8   stipulation ambiguous, and I do not think it is.  I think that

9   there was a meeting of the minds, as the Court just stated,

10  maybe not as to the effect.  And that's unfortunate for Metric

11  and for Waterfall and the attorneys, but my clients relied on

12  what they thought the agreement meant.  The agreement seemed

13  perfectly clear to me and to them to mean and, candidly,

14  everyone I've shown it to thinks it to mean, right?  To a

15  person, everyone I've shown it to says, oh, that debt's

16  dischargeable in Chapter 13.

17      Mr. Nye pointed to the confirmation order that -- as

18  provided in Section 1328, I actually think that's a good

19  argument for the Court to say this isn't a waiver under

20  Section 1328(a) because -- or that this debt cannot be

21  excepted from discharge in Chapter 13 because it's pointing

22  directly to the super discharge provisions in 1328 to say,

23  hey, 1328(a)(6) debts are going to be discharged.  Look here,

24  creditor, they're going to be discharged.  And as the Court

25  aptly pointed out, that's for the bankruptcy attorney to

1   understand and properly strategize and advise his client on

2   and not to later say, hey, we didn't understand that; we

3   should therefore get relief.

4        And one final point, Your Honor.  Just the judge found it

5   important, Judge Gan found it important that Metric never

6   would have agreed to this if they would have understood it.

7   That's not the standard.  And also the exact same thing

8   applies to my client.  They never would have agreed to it if

9   they understood it to mean what Judge Gan has now said it

10  means, because if we would have done nothing in the adversary

11  proceeding, we would have been better off.  We would have had

12  a larger portion dischargeable under (a)(6) and a smaller

13  portion non-dischargeable, and so why would we agree to make a

14  larger portion non-dischargeable?  It just simply makes no

15  sense.  We never would have done that.

16       And so therefore the same arguments Judge Gan used to say

17  this contract is ambiguous would apply now that he's

18  reimagined the contract, and it just simply is not the law in

19  Arizona, and I would ask the Court to find that this is not a

20  waiver of discharge.  And if it goes back to a Rule 60 hearing

21  at the bankruptcy court, then we'll go ahead and litigate

22  that.

23       Thank you, Your Honor.  Any questions?

24            THE COURT:  No.  Thank you both for your arguments.

25  I'll take the matter under advisement, and we'll have a ruling

1    in the next couple weeks.

2            MR. NYE:  Thank you, Your Honor.

3            THE COURT:  Thank you.

4        (Court recessed at 2:28 p.m.)

1                    C E R T I F I C A T E

2

3          I, Aaron H. LaDuke, do hereby certify that I

4   reported the foregoing proceedings to the best of my skill

5   and ability, and that the same was transcribed by me via

6   computer-aided transcription, and that the foregoing pages

7   of typewritten matter are a true, correct, and complete

8   transcript of all the proceedings had, as set forth in the

9   title page hereto.

10         Dated this 8th day of September, 2022.

11

12

13                    _____s/Aaron H. LaDuke_____
                      Aaron H. LaDuke, RMR, CRR
14                    Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25